UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JOCELYN MCLEAN                                                    PLAINTIFF

V.                                                 CIVIL ACTION NO. 3:22-CV-33-DPJ-FKB

FORMER MISSISSIPPI DEPUTY CHIEF                                  DEFENDANTS
MEDICAL EXAMINER
J. BRENT DAVIS, M.D., ET AL.


ORDER

Plaintiff Jocelyn McLean, a mother to four children, says that multiple Defendants violated her constitutional rights and committed state-law torts when she was arrested and confined without probable cause. McLean's arrest followed a deficient autopsy report concluding that her infant daughter was murdered. The matter is before the Court on Defendant J. Brent Davis's Motion for Partial Judgment on the Pleadings [21] and Motion for Partial Summary Judgment [23]. The Court will also address McLean's Motion to Lift Stay of Discovery [38] and Motion for Discovery Under Rule 56(d) [36].

I.      Factual and Procedural Background

The facts are tragic and will be summarized under the applicable standards in the light most favorable to McLean. On September 14, 2016, McLean prematurely gave birth to a daughter, Emberly McLean-Bernard. Compl. [1] ¶ 12. Because of her premature birth, Emberly spent the first six days of her life at the University of Mississippi Medical Center until her discharge on September 20, 2016. *Id.* ¶ 14. Shortly after Emberly's discharge, McLean rushed the newborn to Tallahatchie General Hospital because she was failing to eat, pale, and gasping for breath. *Id.* ¶ 15. After medical personnel spent four hours trying to save her life with numerous medical interventions, Emberly died. *Id.* ¶ 19.

Shortly after Emberly's death, her body was personally picked up by Tallahatchie County Coroner—and Defendant—Ginger Meriwether. *Id.* ¶¶ 20–21. Meriwether allegedly received medical reports on Emberly's care, interviewed hospital staff, and prepared her own report. *Id.* Then, on September 23, 2016, Emberly's body was transferred to the State Medical Examiner's Office for an autopsy. *Id.* ¶ 27.

There, movant Davis, the Deputy Chief Medical Examiner, was assigned to conduct the autopsy. *Id.* Despite Emberly's medical records and condition on arrival—which both suggested Emberly's condition was directly traceable to lifesaving efforts—Davis claimed, in the November 29, 2017 autopsy report, that Emberly's injuries were the result of blunt force trauma featuring strangulation and that the cause of death was homicide. *Id.* ¶ 38. On December 1, 2017, Defendants Chief Medical Examiner Mark Levaughn and Deputy Medical Examiner Liam Funte agreed with Davis's conclusions in the autopsy report and signed off on it. *Id.* ¶ 39.

On April 16, 2019, following a period of investigation, a grand jury indicted McLean for the capital murder of her daughter Emberly. *Id.* ¶ 44. McLean voluntarily surrendered on May 30, 2019, and was held in jail at the Tallahatchie County Correctional Facility for approximately 11 months. *Id.* ¶¶ 48, 51. McLean eventually secured bail. *Id.* ¶ 51.

On October 7, 2021, Davis informed the District Attorney that the cause and manner of death was not blunt force injuries with features of strangulation and that the injuries he previously observed were consistent with lifesaving efforts. *Id.* ¶ 55. Davis claims that he based his new findings on new medical information (the medical records from the hospital) he received from the District Attorney on October 1, 2021. McLean disputes that. *Id.* ¶ 56. Regardless, the October 11, 2021 trial was canceled and, on October 19, 2021, the capital-murder charges against McLean were dismissed with prejudice. *Id.* ¶ 57.

2

Shortly thereafter, McLean commenced this suit alleging, relevant to this Order, causes of action against Defendants Davis, Levaughn, and Funte for (1) intentionally fabricating the autopsy report and/or (2) recklessly preparing the autopsy report resulting in McLean being arrested and held in pre-trial confinement without probable cause. *Id.* ¶¶ 59–68. Under either theory, McLean alleges that Defendants violated her Fourth and Fourteenth Amendment rights; claims she pursues under 42 U.S.C § 1983. *Id.*

On April 28, 2022, Davis filed a Motion for Partial Judgment on the Pleadings [21]. There, he argued that Count One, McLean's Fourteenth Amendment claim, must be dismissed. Mot. [21] at 2; Def.'s Mem. [22] at 5. Levaughn and Funte joined his motion. Joinder [27]; [30]. The same day he sought dismissal, Davis filed a Motion for Partial Summary Judgment [23] on Counts One and Two. He premised some arguments on an eight-page affidavit and 45 pages of other documents. Davis Aff. [23-1]. Notably, Davis filed his motion for partial summary judgment before discovery began. The Court will begin by addressing the motion for partial judgment on the pleadings; all motions are fully briefed, and the Court has both personal and subject-matter jurisdiction to consider the dispute.

II.     Motion for Partial Judgment on the Pleadings

A.     Standard

"The standard for deciding a Rule 12(c) motion [for judgment on the pleadings] is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). This standard requires the Court to "accept[] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome either motion, a plaintiff must plead "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notably, "[§] 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).

Since the Rule 12 standard is not heightened for § 1983 claims, under both Rule 12(b)(6) and 12(c), "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

B.     Analysis

McLean asserts that Davis and others violated her Fourteenth Amendment right to due process by "creating, approving, and authorizing a fabricated, false, misleading, and scientifically inaccurate autopsy report." Compl. [1] ¶ 60. She contends that this same conduct

4

violated her Fourth Amendment right "to be free from false arrest and unreasonable seizures without probable cause." *Id.* ¶ 68. She pursues both claims under § 1983, which provides a cause of action against persons who, under color of state law, deprive someone "of any rights, privileges, or immunities secured by the Constitution."

Davis acknowledges that the Court must accept the factual allegation that he fabricated the autopsy report. Def.'s Mem. [22] at 10.[1] But even assuming that fact, he argues that the Fourteenth Amendment claim must be dismissed because the Fourth Amendment addresses pretrial deprivations, unless that amendment is unavailing, something he says McLean has not shown. Def.'s Mem. [22] at 6–7. McLean disagrees, arguing that the Fifth Circuit has recognized a freestanding Fourteenth Amendment claim where the defendant fabricates evidence leading to criminal charges.

Both parties premise their arguments on *Cole v. Carson*, 802 F.3d 752, 772–73 (5th Cir. 2015), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016), *and opinion reinstated in part*, 935 F.3d 444 (5th Cir. 2018) (en banc)). In that case, officers shot and nearly killed Ryan Cole, a teenager who possessed a gun in public, at times holding it to his own head. *Id.* at 755. There was no dispute that Cole illegally possessed the weapon, but the plaintiffs alleged that the officers attempted to cover-up their own unlawful shooting by fabricating a story that Cole pointed the gun at them. *Id.* at 756. As a result of that allegedly false statement, Cole was charged with aggravated assault on a public servant (a felony offense), but the charge was later dropped. His guardians then sued the officers under the Fourth and Fourteenth Amendments based on the allegedly fabricated story and resulting felony charge. *Id.* The district court denied the officers' motion to dismiss both claims. *Id.* at 755.

---

[1] All citations to filings will refer to the CM/ECF page number.

On appeal, the Fifth Circuit considered whether the claim could be brought under the Fourteenth Amendment since Cole never went to trial. After surveying other circuits, the court "agree[d] with those that have found a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Id.* at 771. It then held: "Where police intentionally fabricate evidence and successfully get someone falsely charged with a felony as cover for their colleagues' actions, *and the Fourth Amendment is unavailing*, there may be a due process violation." *Id.* at 772 (emphasis added).[2] Notably, Cole's Fourth Amendment claim was unavailing because there was otherwise probable cause to arrest him for unlawfully carrying a weapon. *Id.* at 764–65.

The parties offer competing constructions of the *Cole* holding and present two questions: (1) whether the *Cole* court recognized a freestanding Fourteenth Amendment claim that may be asserted even if the Fourth Amendment otherwise applies and (2) if not, whether the Fourteenth Amendment due-process claim must be dismissed if the plaintiff fails to plead facts showing that the Fourth Amendment claim is unavailing. *See* Def.'s Reply [44] at 1; Pl.'s Mem. [40] at 7–9.

1.    Freestanding Fourteenth Amendment Claim

McLean says *Cole* allows plaintiffs to pursue Fourth *and* Fourteenth Amendment claims based on fabricated evidence that leads to criminal charges but no trial. While acknowledging that *Cole* discussed whether the Fourth Amendment claims were "unavailing," she argues that the court merely provided a "description of the particular facts in the case of Ryan Cole." Pl.'s Resp. [40] at 11. In other words, the fact that Cole's Fourth Amendment claim was unavailing

---

[2] Despite *Cole's* "peripatetic procedural history," its recognition of this due-process right "is binding Fifth Circuit precedent today." *Morgan v. Chapman*, 969 F.3d 238, 250 & n.7 (5th Cir. 2020).

does not mean that Fourteenth Amendment substantive due-process claims based on intentional fabrication are cognizable only when the Fourth Amendment is unavailing. The Court finds that this construction fails to fully address the *Cole* analysis and ultimate holding.

*Cole* first wrestled with whether a Fourteenth Amendment claim could cover pretrial injuries given the Fourth Amendment's protection of those rights. That analysis started with this holding in *Albright v. Oliver*: "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

*Cole* essentially created an exception to this general rule in cases where officers fabricate facts to support a criminal charge. In doing so, the Fifth Circuit distinguished *Albright* and noted that "a majority of the Justices in *Albright* depended upon the potential availability of a Fourth Amendment recourse." *Cole*, 802 F.3d at 766. But "[u]nlike Albright, who *chose* to invoke substantive due process rather than the Fourth Amendment, Ryan Cole has no other option." *Id.* Thus, the Fifth Circuit viewed the availability of a Fourth Amendment remedy as a distinction with a difference.

The court emphasized that point again when considering cases from other circuits. For example, it distinguished cases from the Seventh Circuit that found no due-process violation for pretrial injuries by explaining that those holdings "occurred in cases that . . . *did not address the availability of a Fourth Amendment claim*." *Id.* at 770 (emphasis added) (citing *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015)). The Fifth Circuit also noted that "*where* there is no

more specific constitutional protection available, the Fourteenth Amendment may offer

protection." *Id.* at 772 (emphasis added).

Accordingly, this Court concludes that the Fifth Circuit meant what it said when

summarizing its core holding: "Where police intentionally fabricate evidence and successfully

get someone falsely charged with a felony as cover for their colleagues' actions, *and the Fourth*

*Amendment is unavailing*, there may be a due process violation." *Id.* at 772 (emphasis added).

*Cole* did not create a freestanding due-process right for deprivations that occur before trial. *See*

*Rogers v. City of Tupelo*, No. 1:13-CV-243-SA-DAS, 2016 WL 1249156, at *3 (N.D. Miss. Mar.

28, 2016) (noting that Fourteenth Amendment claim may be viable *because* the Fourth

Amendment claim was unavailing); *Tyson v. Daspit*, No. 6:19-CV-726, 2020 WL 5876706, at *5

(W.D. La. Oct. 1, 2020) (finding viable due-process claim under *Cole* analysis because Fourth

Amendment claim was unavailing); *Traylor v. Yorka*, No. 3:21-CV-406-S, 2022 WL 3349146 at

*7 (N.D. Tex. Aug. 11, 2022) ("A plaintiff may pursue a due process fabrication of evidence

claim under the Fourteenth Amendment only when a Fourth Amendment claim . . . is

'unavailing.'").

2.      Pleading Standards

The question remains whether McLean must plead facts that render her Fourth

Amendment claim unavailing to state a Fourteenth Amendment claim for relief under *Cole*.

Davis says she must, quoting two non-binding district court cases. First, in *Guillory v. Dalbour*,

the court stated that in an intentional fabrication case, "the plaintiff needs to allege facts that

show the claim cannot be brought under the Fourth Amendment." No. 2:15-CV-02452, 2016

WL 5415072, *5 (W.D. La. Sept. 27, 2016). That same language later appeared in *Saturn v.*

*Barnett*, though *Guillory* was not cited. No. A-16-CA-505-LY, 2016 WL 7392240 (W.D. Tex.

8

Dec. 20, 2016), *report and recommendation adopted*, 2017 WL 9850919, at *3 (W.D. Tex. Jan. 12, 2017). Neither *Guillory* nor *Saturn* cited authority for requiring a plaintiff to plead facts showing the Fourth Amendment claim is unavailing, but Davis says they relied on *Cole*. *See* Def.'s Reply [44] at 5. That's not apparent, but, if they did, this Court would take a different path.

*Cole* never says dismissal is appropriate if the plaintiff fails to plead facts showing the Fourth Amendment claim is unavailing. Instead, the court affirmed dismissal of the Fourth Amendment claim (because it failed to state a claim) and then allowed the Fourteenth Amendment claim to go forward because the Fourth Amendment claim was unavailing. The real question—and one *Cole* does not address—is *when* a court must make this call.

Davis says the decision arises at the pleading stage, but Rule 8(d)(2) permits a party to "set out 2 or more statements of a claim . . . alternatively or hypothetically," and "the pleading is sufficient if any one of them is sufficient." Rule 8(d)(3) then states that "[a] party may state as many separate claims . . . as it has, regardless of consistency." These provisions are correctly read together. 5 Fed. Prac. & Proc. Civ. § 1282 (4th ed.). And they allow the plaintiff to draft claims "in terms of 'either-or' propositions." *Id.* Under *Cole*, Fourth and Fourteenth Amendment fabrication-of-evidence claims are "either-or"; if the former is availing, then the

latter is not.  And nothing in *Cole* states that alternative pleading is impermissible in this context.[3]

Though not directly on point, there is some evidence the Fifth Circuit would allow alternative pleading under *Cole*.  In *Morgan v. Chapman*, the plaintiff claimed that the defendants fabricated evidence to support charges that were later dropped; he sued two governmental agents asserting constitutional claims for malicious prosecution and abuse of process.  969 F.3d 238, 241 (5th Cir. 2020).  The Fifth Circuit reversed the trial court's denial of a motion to dismiss because there are no such constitutional claims.  *Id.*  But, on appeal, the plaintiff shifted theories and asserted that his complaint should be broadly construed to include claims based on fabricated evidence under the Fourth and Fourteenth Amendments.  *Id.* at 247–48.  The Fifth Circuit concluded that such theories would have to be pleaded in an amended complaint and elected to examine the claims for futility before remanding to the district court. *Id.* at 248.  Notably, the futility inquiry utilizes "the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *Stripling v. Jordan Prod. Co., Inc.*, 234 F.3d 863, 873 (5th Cir. 2000).

The court first concluded that the Fourth Amendment seizure claim would not be futile but instructed the district court to consider on remand whether the claim was waived.  *Id.* at 250. Having found a non-futile Fourth Amendment claim, the court then considered the due-process

---

[3] That issue might raise another—what does it mean to be unavailing?  For example, Davis argues that the qualified-immunity arguments he asserted in his motion for summary judgment of the Fourth Amendment claim would not render that claim unavailing as to the *Cole* claim.  Def.'s Reply [44] at 6 n.4.  But it appears that the Fourth Amendment fabrication claim in *Cole* was rendered unavailing because the court dismissed it based on qualified immunity.  *Cole*, 802 F.3d at 765 (holding, "the Coles have not pled a violation of clearly established law" as to Fourth Amendment claim); *see also Morgan v. Chapman*, No. 6:17-CV-00004, 2022 WL 4367057, at *16 (S.D. Tex. Sept. 20, 2022) (holding that Fourth Amendment claim was unavailing because it was dismissed based on qualified immunity).  Thus, it might be that the Court will not know whether the Fourth Amendment claim is unavailing until later in the dispute.  If this issue resurfaces, the parties will need to brief what it means to be unavailing.

claim, finding that "[g]iven the on-point *Cole* holding, the due[-]process claim would similarly

not represent a futile amendment." *Id.* Thus, the Court held:

> It would not be futile on the merits for Morgan to pursue an unreasonable search, unreasonable seizure, or due process claim. But the decision as to whether Morgan should be allowed to amend is not ours to make. It is unclear what legal theories the plaintiff presented in the district court. And his claims seem to have transformed on appeal. We remand for the district court to consider amendment and, if necessary, issues of waiver and forfeiture.

*Id.* at 250.

Davis appropriately acknowledges *Morgan* and correctly notes that the court did not

address whether the due-process claim could move forward if the district court allowed the

plaintiff to amend the complaint and add a Fourth Amendment claim (i.e., found that it was not

waived). Def.'s Reply [44] at 3. But the Fifth Circuit panel that decided *Morgan* was clearly

aware of *Cole* and based its analysis entirely on that decision. *See Morgan*, 969 F.3d at 250.

Neither its analysis of the futility issue nor its instructions to the district court suggest that

pleading a due-process claim would be futile *if* the plaintiff was allowed to plead the Fourth

Amendment claim.[4]

The Court acknowledges that *Morgan* does not answer the question. But neither is there

any binding authority that suggests a different pleading standard for substantive-due-process

claims under *Cole*. Absent more, the Court concludes that Rules 8(d)(2) and (d)(3) apply to

these alternative theories of recovery. The Motion for Partial Judgment on the Pleadings [21] is

denied.

---

[4] Upon remand, the district court granted an opposed motion seeking leave to file an amended complaint that asserted both claims. *Morgan v. Freshour*, No. 6:17-CV-00004, 2021 WL 4458759 (S.D. Tex. Sept. 29, 2021). But it does not appear from the docket that the defendants asserted this argument when opposing the amendment or remand.

III.     Motion for Partial Summary Judgment

The Court turns next to Defendant Davis's Motion for Partial Summary Judgment based on qualified immunity.  While McLean opposes the motion on its merits, *see generally* Pl.'s Resp. [39], she also filed a Motion to Lift Stay of Discovery [38] and a more tailored Motion for Discovery Under Rule 56(d) [37].  Davis opposes both motions.  *See generally* Def.'s Resp. [46]; Def.'s Resp. [47].

A.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000). It must "interpret all facts and draw all reasonable inferences in favor

of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v.

Cotton*, 572 U.S. 650, 660 (2014). But conclusory allegations, speculation, unsubstantiated

assertions, and legalistic arguments have never constituted an adequate substitute for specific

facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754,

759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little*, 37

F.3d at 1075.

      B.     Analysis

     In his memorandum, Davis states that he is limiting his summary-judgment arguments to

the Fourth Amendment claim, relying on his motion for judgment on the pleadings as to the

Fourteenth Amendment claim. *See* Def.'s Mem. [24] at 7. Given that representation—and the

absence of substantive analysis—the Court will likewise focus on the Fourth Amendment claim,

starting with whether qualified immunity applies.[5]

      1.     Qualified Immunity-Recklessness Theory

     Davis first argues that he is entitled to qualified immunity as to any Fourth Amendment

claim based on reckless—as opposed to intentional—conduct. As a threshold point, McLean

clarifies in her response that she is not pursuing "an 'independent constitutional claim' for

---

[5] In his reply, Davis faults McLean for failing to identify "authority from the Fifth Circuit or the U.S. Supreme Court holding that a medical examiner who acts recklessly—but not intentionally—in formulating an opinion in [an] autopsy report violates the Fourth or Fourteenth Amendment rights of an individual who is later arrested in connection with such an opinion." Def.'s Reply [45] at 4–5. This Court does "not consider arguments raised for the first time in reply." *Wallace v. City of Jackson*, No. 3:17-CV-270-DPJ-FKB, 2018 WL 6251863, at *2 (S.D. Miss. Nov. 29, 2018) (citing *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs." (citation omitted)).

reckless investigation" and asserts instead that the reckless investigation "gives rise to constitutional violation[] . . . for illegal detention." Pl.'s Mem. [39] at 14. So, the question is whether Davis is entitled to qualified immunity as to that theory.

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This standard requires courts to determine: (1) "[W]hether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right" and, if so, (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). It is within the Court's discretion to determine the sequencing of the two-step analysis. *Id.* at 242.

In the present case, the Court will start with the clearly established law. When qualified immunity is asserted in good faith, the plaintiff "bear[s] the burden to rebut [the] qualified immunity defense and demonstrate that there were [constitutional] rights that were clearly established at the time of the constitutional violation." *Keller v. Fleming*, 952 F.3d 216, 221 (5th Cir. 2020). The Supreme Court has

> "repeatedly told courts . . . not to define clearly established law at a high level of generality." [*Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).] The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." 533 U.S., at 205, 121 S. Ct. 2151.

14

*Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *see also City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (noting right must be defined "with specificity").

To meet this standard, "[a] case 'directly on point' is not required, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020) (quoting *al-Kidd*, 563 U.S. at 741). And that requires "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (citation omitted). "Ultimately, '[t]he dispositive question is whether the violative nature of the particular conduct is clearly established.'" *Cunningham*, 983 F.3d at 191 (quoting *Mullenix*, 577 U.S. at 12). This standard "is difficult to satisfy." *Id.* (citation omitted).

McLean says that by the time she was arrested, *Hernandez v. Terrones* had clearly established constitutional violations based on reckless—as opposed to intentionally fabricated—investigations. 397 F. App'x 954, 968 (5th Cir. 2010). *Hernandez* involved police officers who helped procure a plaintiff's arrest and eventual murder conviction by allegedly "fabricat[ing a] confession" from an alleged accomplice that identified the plaintiff as the murderer; presenting that witness a one-photo photo lineup identifying the plaintiff; telling that witness he could not change his story when he later tried to recant; fabricating an incriminating report of another witness's statement and excluding his exculpatory comments from their report; and brushing off a witness who said that another individual admitted to the murder while covered in blood and holding a knife. *Id.* at 958–59. Although Hernandez was convicted and served 13 years in prison before his conviction was overturned, the Fifth Circuit held that the officers were entitled to qualified immunity on a reckless-investigation claim, noting that "'reckless investigation' was not a clearly established stand[-]alone constitutional violation at the time of the events in

15

question . . . [though] evidence of a reckless investigation *could support cognizable constitutional claims*, such as ones for false arrest or illegal detention, under § 1983." *Id.* at 968 (emphasis added).

McLean relies on this language and argues that the present case "presents the exact set of facts that *Hernandez* acknowledged could support a constitutional claim" because Defendants "looked the other way in the face of exonerative evidence." Pl.'s Mem. [39] at 18–19. While the Court understands McLean's general point, she seems to state the right with "a high level of generality." *Mullenix*, 577 U.S. at 12. Moreover, the police officers in *Hernandez* did more than look the other way, and their investigation did not involve the same type of decisions a doctor would face when preparing an autopsy. In short, it is not apparent that the "violative nature of particular conduct" by the police officers in *Hernandez* is sufficiently similar to give a doctor notice that a reckless autopsy report might violate the constitution. *al-Kidd*, 563 U.S. at 742. But even assuming it is, "unpublished opinions 'do not establish any binding law for the circuit,' so 'they cannot be the source of clearly established law for the qualified immunity analysis.'" *Henderson v. Harris County*, 51 F.4th 125, 133 (5th Cir. 2022) (quoting *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019)).

The only other case McLean cites from within the Fifth Circuit is *Brooks v. Hayne*, a factually similar district-court case the Fifth Circuit affirmed. No. 3:13-CV-901-HTW-LRA, 2016 WL 9450597 (S.D. Miss. Apr. 2, 2016), *aff'd sub nom. Brewer v. Hayne*, 860 F.3d 819 (5th Cir. 2017). There, the district court presumed that reckless conduct in preparing an autopsy report could support a constitutional claim. *See id.* at *16. But that court granted summary judgment upon finding that the defendant "acted reasonably." *Id.* at *18. The Fifth Circuit affirmed on that basis without addressing whether the recklessness theory was viable. Indeed,

16

the court stated, "we do not reach the question of whether recklessness in producing scientific evidence is sufficient to defeat qualified immunity." *Brewer v. Hayne*, 860 F.3d 819, 825 n.23 (5th Cir. 2017). Accordingly, *Brewer* is merely a district court opinion which "doesn't clearly establish the law in a jurisdiction." *Jamison v. McClendon*, 476 F. Supp. 3d 386, 404 n.128 (S.D. Miss. 2020). McLean has not identified binding authority that clearly establishes the right she hopes to pursue.

McLean alternatively contends that there exists a robust consensus of persuasive authority from the First, Eighth, Ninth, and Tenth Circuits for the proposition that there is a claim under § 1983 for violations of the Fourth Amendment resulting from recklessly performed "medical or scientific" investigations. Pl.'s Resp. [39] at 20. Some of her cases are on point.

The most analogous opinion is *Galbraith v. County of Santa Clara*, where the Ninth Circuit held that "a coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment." 307 F.3d 1119, 1126 (9th Cir. 2002). The First Circuit later adopted that position in *Burke v. Town of Walpole*, applying it to bite-mark opinions from two forensic odontologists. 405 F.3d 66, 89 (1st Cir. 2005) (citing *Galbraith*, 307 F.3d at 1126). In *Pierce v. Gilchrist*, the Tenth Circuit determined that reckless falsification or omission of evidence could amount to a constitutional violation where a forensic analyst intentionally or recklessly identified hairs from a defendant as matching those at a crime scene. 359 F.3d 1279, 1282, 1299 (10th Cir. 2004). The least similar case McLean cites is *Amrine v. Brooks*, where the Eighth Circuit held there could be a § 1983 claim for reckless investigation, but it considered the issue under the Fourteenth Amendment's substantive-due-process clause, and the investigation was not scientific. 522 F.3d 823, 833 (8th Cir. 2008).

17

"While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that." *Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) (noting that "only two circuits had weighed in on the 'contours of the right'" and concluding that those "cases alone do not provide sufficient authority to find that the law was clearly established"). Assuming *Galbraith*, *Pierce*, and *Burke* meet the particularity *Mullinex* demands, three circuits does not a robust consensus make. *Lincoln*, 874 F.3d at 850; *see also McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) (refusing to find a "robust consensus of persuasive authority" on basis of on-point authority from one circuit, where "a majority of circuit courts [had] not yet weighed in"). McLean held the burden of identifying cases that "placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. She has not met that burden.

Because Davis did not violate a right defined by clearly established law, the Court declines to reach the merits. Admittedly, there are compelling reasons to determine whether a constitutional violation occurred (even when the law is not clearly established). *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 n.40 (5th Cir. 2020). But it is not appropriate to wade through contested facts in the interest of avoiding constitutional stagnation. *See Pearson*, 555 U.S. at 237 (discussing the many drawbacks in reaching merits of constitutional issue). Here, where a summary-judgment motion is pending before discovery has occurred (and there was no violation of clearly established law), discussing the merits could resemble an impermissible advisory opinion. Accordingly, Davis is granted qualified immunity on McLean's Fourth Amendment § 1983 claim premised on recklessness.

2.      Intentional-Fabrication Claim

Next, Davis asks the Court to grant summary judgment on the intentional fabrication

claims under the Fourth and Fourteenth Amendments, arguing that McLean has not created a

genuine material dispute.  As discussed below, because McLean's motion for discovery pursuant

to Rule 56(d) is granted, Davis's motion for partial summary judgment on the remaining claims

is denied without prejudice.

Rule 56(d) states:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it
cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

"Rule 56(d) motions for additional discovery are broadly favored and should be liberally

granted."  *Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citation

omitted).  But to successfully utilize the rule, the party seeking discovery

may not simply rely on vague assertions that additional discovery will produce
needed, but unspecified, facts."  Instead, the non-moving party must "set forth a
plausible basis for believing that specified facts, susceptible of collection within a
reasonable time frame, probably exist and indicate how the emergent facts, if
adduced, will influence the outcome of the pending summary judgment motion.

*Id.* (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (other citations omitted));

*accord Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017).

Davis moved for partial summary judgment before the discovery period opened.

Normally, it would be an easy call to grant Rule 56(d) relief under those circumstances.  But

because Davis asserts qualified immunity, the standard is more arduous.  "One of the most

salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-

consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)).

The Fifth Circuit addressed this issue in *Hutcheson v. Dallas County*, where the defendant sought dismissal, but the court converted the motion to one for summary judgment and granted it while denying the plaintiff's motion for limited discovery. 994 F.3d 477, 479 (5th Cir. 2021). The Fifth Circuit affirmed, holding:

> In QI cases, we use a two-step procedure "under which a district court may defer its QI ruling if further factual development is necessary to ascertain the availability of that defense." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). First, the court determines whether the pleadings "assert facts which, if true, would overcome the defense of QI." *Id.* (internal quotations omitted). Second, if the pleadings assert such facts, the district court issues a narrowly tailored discovery order "to uncover only those facts needed to rule on the immunity claim." *Id.* (internal quotations omitted).

*Id.* at 481 (brackets removed).

McLean satisfies the first step as to the intentional-fabrication claim because Davis concedes that the complaint factually alleges intentional conduct, Def.'s Mem. [22] at 10, and further concedes that intentionally falsifying an autopsy would violate clearly established law, Def.'s Mem. [24] at 7. But Davis argues that McLean cannot satisfy the second step because Davis did not—as a matter of law—act intentionally, something he swears to in his own affidavit and supports with 45 pages of documents. Def.'s Mem. [46] at 3. In other words, Davis says no discovery is necessary to decide qualified immunity because the Court should simply accept his side of things.

Davis's intent and his knowledge of certain facts and when he obtained that knowledge are key facts upon which he bases his summary-judgment motion. But by submitting his own affidavit concerning his knowledge and state of mind, Davis has raised issues McLean should—in fairness—be allowed to test through discovery. *See Johnson v. Madison County*, No. 3:21-

20

CV-335-DPJ-FKB, 2022 WL 4110920, at *4 (S.D. Miss. Sept. 8, 2022) (allowing discovery despite qualified-immunity defense where defendant submitted affidavit regarding his knowledge of events); *Converse v. City of Kemah*, No. 3:15-CV-00105, 2021 WL 5811726, at *3 (S.D. Tex. Dec. 7, 2021) ("By introducing their own testimony regarding their subjective knowledge and intent, Defendants have opened the door for Plaintiffs to test that testimony by deposition." (citing *Davis v. Kirkham*, 4:20-CV-74-DMB-JMV, 2021 WL 4392077, at *2–5 (N.D. Miss. Sept. 24, 2021) (allowing plaintiff to depose defendants regarding information in their declarations submitted in support of motion for summary judgment based on qualified immunity))). Indeed, the Supreme Court has anticipated such discovery at the summary-judgment stage. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (noting that "[e]ven if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment *if discovery fails to uncover evidence* sufficient to create a genuine issue as to whether the defendant in fact committed those acts" (emphasis added)).

As for scope, any discovery must be "narrowly tailored to rule on the immunity claims." *Backe*, 691 F.3d at 649. McLean's requested discovery meets that test and addresses issues the Court will face when eventually considering Davis's claim for qualified immunity. *See* McDuff Declaration [36-1]. Her requests are also appropriately tailored to meet Rule 56(d)'s standards. The parties are instructed to contact United States Magistrate Judge F. Keith Ball to schedule a discovery conference.

IV.     Motion to Lift Stay of Discovery

The Court has allowed discovery under Rule 56(d) as to Davis's motion for partial summary judgment, but McLean also seeks an order lifting the stay so she can pursue discovery

on her other claims. The Court denies that motion without prejudice. It has been the Court's experience that parties sometimes agree to full discovery once the qualified-immunity issue is submitted to discovery. On the other hand, there are reasons for the stay. Judge Ball will be in a better position to evaluate these issues when he meets with the parties for the discovery conference. McLean may orally revisit the issue at that time.

V.      Conclusion

The Court has considered all arguments; those not addressed would not alter the results. And for the reasons stated, Defendants Davis, Funte, and Levaughn's Motion for Partial Judgment on the Pleadings [21] is denied. Plaintiff's Motion for Rule 56(d) Discovery [36] is granted. Defendant Davis's Motion for Partial Summary Judgment [23] is granted in part and, under Federal Rule of Civil Procedure 56(d)(1), denied in part without prejudice to refiling. Plaintiff's broader Motion to Lift Stay of Discovery [38] is denied without prejudice. Finally, the parties are instructed to contact Judge Ball within seven days of this order to set the case for settlement conference. If the case cannot be resolved, Judge Ball will conduct a discovery conference.

**SO ORDERED AND ADJUDGED** this the 9th day of February, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE