Exhibit B to
Plaintiff's Opposition to Davis'
Motion for Reconsideration

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES TEMPLETON<br>     Plaintiff | §<br>§<br>§ | |
| v. | §<br>§ | |
| AUSTIN POLICE OFFICERS<br>EDWARD JARAMILLO #8408,<br>STEVEN KIELCHESKI #7314, JAMES<br>STARNES #7338, GADIEL ALAS<br>#7835, TARA DICKEN #4761, AMY<br>BOUDREAU #8370, VANAJAKSHI<br>PATURU, M.D., ROBIN REMSING,<br>LCSW, COLLEEN MCCOLLOUGH,<br>LCSW, INTEGRAL CARE AND<br>AUSTIN LAKES HOSPITAL<br>     Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:19-cv-00848-JRN |

## DEFENDANT OFFICERS' RULE 12(c) MOTION TO DISMISS

TO THE HONORABLE JUDGE JAMES R. NOWLIN:

COME NOW, City of Austin Police Officers Edward Jaramillo, Steven Kielcheski, James Starnes, Gadiel Alas, Tara Dickens, and Amy Boudreau, and file Defendant Officers' Rule 12(c) Motion to Dismiss in response to Plaintiff's Second Amended Complaint.

## I.
## Introduction

James Templeton pleads due process and unreasonable seizure Fourteenth Amendment claims, and an excessive force Fourth Amendment claim under 42 U.S.C. §1983. He alleges that he came home and was surprised by Police Officers performing a welfare check who pointed guns, wrenched his arm and twisted his hands aggravating a shoulder injury when they handcuffed him, took him into emergency detention and transported him to involuntary civil commitment.

The Officers seek judgment on the pleadings for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction based on qualified immunity.

## II.
## Factual Presentation

**A.    Facts Alleged Against Unnamed Police Officers**

Templeton alleges that around 6 p.m. on November 17, 2017, "officers arrived in front of James Templeton's empty home, purportedly performing a welfare check." *2nd Amended Complaint,* ¶1. "Soon Mr. Templeton arrived and parked in his driveway, and was surprised by multiple officers emerging from concealment pointing their guns at him." *2nd Amended Complaint,* ¶1. His pleading incorporates an excerpt from the police report quoting an Officer at the scene. Exhibit A.

> "I pointed my weapon at Templeton. Templeton was ordered to show his hands, walk back towards the sound of the officer's voice, and to get on his knees. Templeton complied with the order. Once to his knees I holstered my service weapon and took out my Taser to hold less-lethal covered. Templeton was handcuffed and frisked for officer safety.

*2nd Amended Complaint,* ¶2. His pleading also incorporates three photos of his emergency detention, presumably from his home security camera. *2nd Amended Complaint,* p.2.

Templeton alleges that when he was handcuffed, his arm was wrenched causing him pain, and his hands were twisted 180° and handcuffs closed tightly so he could not rotate his hands, which caused further pain in his shoulder. *2nd Amended Complaint,* ¶3. He alleges that he cried in pain and begged to remove the handcuffs until his legs eventually began buckling from the pain and his shoulder began spasming causing so much pain he thought his shoulder was dislocated. *2nd Amended Complaint,* ¶4. He further alleges that "[t]hey had no articulable reason to believe he was dangerous when they detained him, and after they frisked him for weapons, they had no objective justification to treat him as dangerous." *2nd Amended Complaint,* ¶22.

The Officers transported Templeton to Defendant Austin Lakes Hospital where he was "involuntarily committed" by the Medical Director, Defendant Dr. Vanajakshi Paturu. *2nd*

*Amended Complaint,* ¶8. Templeton complains that he was taken into "emergency detention" and involuntary civil commitment, even though there was no reason to believe he was a danger to himself or others. *2nd Amended Complaint,* ¶5.

**B.     Irrefutible Facts**

    1.     <u>Peace officers have authority to apprehend a person believed to have a mental illness without a warrant.</u>

§573.001. Apprehension by Peace Officer Without Warrant.
(a) A peace officer, without a warrant, may take a person into custody, regardless of the age of the person, if the officer:
   (1) has reason to believe and does believe that:
     (A) the person is a person with mental illness; and
     (B) because of that mental illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained; and
   (2) believes that there is not sufficient time to obtain a warrant before taking the person into custody.
(b) A substantial risk of serious harm to the person or others under Subsection (a)(1)(B) may be demonstrated by:
   (1) the person's behavior; or
   (2) evidence of severe emotional distress and deterioration in the person's mental condition to the extent that the person cannot remain at liberty.
(c) The peace officer may form the belief that the person meets the criteria for apprehension:
   (1) from a representation of a credible person; or
   (2) on the basis of the conduct of the apprehended person or the circumstances under which the apprehended person is found.

*Tex.Health&SafetyCode,* §573.001.

    2.     <u>The Officers believed that Templeton met the criteria for apprehension.</u>

Officers were at the home responding to a "Check Welfare Urgent" call from "the crisis hotline and [Templeton] had made the comment that he is 'strongly considering shooting himself'." <u>Exhibit A.</u> "While en route to the call, [Officers] checked Templeton's involvements [APD history] which included an EDP [emotionally disturbed person] involvement case reported by his ex-wife who claimed that he had been making concerning statements lately, in particular,

involving numerous guns and ammunition." Exhibit A. En route, the Officers spoke to "Templeton on the phone . . . [who] stated that he was armed while on the phone with them." Exhibit A.

Officers detained Templeton based on representations from Defendant Robin Remsing, LCSW, who staffed Integral Care's Crisis Hotline. *2nd Amended Complaint,* ¶6. Defendant Colleen McCollough, LCSW, came to the scene to personally evaluate him. *2nd Amended Complaint,* ¶7. He complains that "even with [their] input, the officers were recklessly and deliberately indifferent to Mr. Templeton's rights, because having interacted with him during the prolonged period of his arrest, it must have been clear to them (as it would have been clear to an[y] reasonable person) that he did not meet the emergency criteria for warrantless involuntary civil commitment." *2nd Amended Complaint,* ¶6.

Defendants Remsing and McCollough are Licensed Clinical Social Workers (LCSW) employed by the Travis County Mental Health & Mental Retardation Center, dba Integral Care. *2nd Amended Complaint*, ¶17&19. Texas requires all practicing social workers to be licensed and offers different levels of licensure. The LCSW designation is the highest credential requiring a Masters in Social Work from an institution accredited by the Council on Social Work Education. The steps to become an LCSW include accruing supervised clinical experience, completing 3,000 hours clinical work and 100 supervised hours over 24-40 months, followed by submitting an application for upgrade of licensure.[1]

---

[1] The court may take judicial notice of adjudicative facts. *Fed.RulesEvid.,* Rule 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (approving judicial notice of public records by district court reviewing motion to dismiss).

### III.
### Motion for Judgment on the Pleadings

"'A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).' Thus, the inquiry focuses on the allegations in the pleadings' and not on whether the 'plaintiff actually has sufficient evidence to succeed on the merits.'" *Ackerson v. Bean Dredging LLC,* 589 F.3d 196, 209 (5th Cir. 2009). To state a claim, plaintiffs need not include detailed factual allegations, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, (2007). The plaintiff's obligation to provide the grounds of their entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly,* at 1964-65. Rule 12(b)(6) asks a court to dismiss a complaint for failure to state a claim upon which relief can be granted." The U.S. Supreme Court has adopted a two-step approach to determine if a claim should be dismissed under Rule 12(b)(6). *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009), citing *Twombly,* 550 U.S. at 544. First, though generally a court should accept the veracity of well pleaded facts and view them in a light most favorable to the plaintiff, this tenet is inapplicable to allegations that are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Second, a complaint can survive a motion to dismiss only if it states a factually plausible claim for relief. *Id.* A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Furthermore, the allegations in a complaint must raise a right to relief that is more than speculative, assuming that the allegations are true. *Twombly,* 550 U.S. at 555. The well pleaded facts must allow the court to infer the possibility of the defendant's misconduct and show that the plaintiff is entitled to relief. *Iqbal,* at 678. In deciding a motion to dismiss under Rule 12(b)(6), a court

generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

In ruling on a Rule 12(b)(6) motion, the court typically may not look beyond the pleadings. *Hall v. Hodgkins,* 305 Fed. Appx. 224, 227 (5th Cir. 2008) (citing *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994)). Pleadings, for purposes of a Rule 12(b)(6) motion include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011).

## IV.
## Argument and Authorities [2]

42 U.S.C. §1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the constitution and laws of the United States. The Fifth Circuit applies a heightened pleading standard, which requires plaintiffs to plead facts with particularity, focusing specifically on the conduct of the individual who caused the injury. *See Elliot v. Perez,* 751 F.2d 1472, 1479 (5th Cir. 1985). This standard requires more than mere conclusory assertions. *See Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir. 202).

Qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. *Morgan v. Swanson,* 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

---

[2] On May 12, 2020, the Court ordered that "discovery is stayed until further notice" until the Court may rule on qualified immunity. [Doc. 33]

Templeton's due process and unreasonable seizure claims are indistinguishable, he does not plead a constitutional violation, and under clearly established law the Officers are entitled to qualified immunity warranting judgment on the pleadings. In shotgun fashion, Templeton asserts all constitutional claims against all six (6) Officers at the scene jointly, failing to plead a single factual allegation against a single Officer. *2nd Amended Complaint,* ¶16, 21, 24, 26. But a government official can be held liable only for his own misconduct. *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011). He has twice amended, but has never pled the inapplicability of qualified immunity which is his burden to overcome.

**A.     Templeton fails to state a Fourteenth Amendment violation of due process claim.**

Templeton asserts that "the Fourteenth Amendment prohibits states from 'depriv[ing] any person of life, liberty, or property, without due process of law.' Further, Texas law limits involuntarily mental health detention without a warrant to circumstances in which an officer" meets the criteria under Section 573.001.[3] *2nd Amended Complaint,* ¶25.

1.     <u>Templeton fails to plead a 14th Amendment constitutional violation.</u>

Templeton's due process claim is based solely on the legal conclusion that ""[o]n information and belief, if Defendants had submitted an application for emergency detention to a magistrate, as is alternatively provided in Texas law, any magistrate would have denied the application." *2nd Amended Complaint,* ¶26. His legal conclusion offers no basis for speculating on

---

[3] Should the Court consider Templeton to have asserted a claim under TH&SC Chapter 573, it lacks subject matter jurisdiction over his state law claim. *Gordon v. Neugebauer,* 2014 WL 6892716 (N.D. Tex.—Abilene Div. 2014) ("Section 573.001 does not create a private cause of action-it is a criminal statute and only the state of Texas may prosecute individuals for violation of the statute. *See Tex. Health & Safety Code Ann.* 571.021 ("[t]he state attorney general and the district and county attorneys within their respective jurisdictions shall prosecute violations of this subtitle [the Texas Mental Health code]"); Tex. Health &Safety Code Ann. §571.020(c) (listing punishments involving monetary fines and jail time for violation of any provision of the Texas Mental Health Code). This Court lacks jurisdiction to prosecute such state law crimes . . . in Texas, the Texas state courts have exclusive jurisdiction over state criminal statutes.")

a judge's ruling, at best a "conclusory allegation" which does not survive a Rule 12(c). *Twombly,* at 1965.

        2.    <u>The law was not clearly established under these facts.</u>

The law was clearly established that his due process claim is not a cognizable constitutional violation under the Fourteenth Amendment. Where a provision of the Constitution provides an explicit textual source for a plaintiff's claims, the court must analyze the claims under that particular provision. The "deprivation of liberty" is addressed by the Fourth Amendment, not the Fourteenth. *Calhoun v. City of Austin,* 2007 WL 9700763 *2 (W.D. Tex.—Austin Div. 2007) ("The Fourth Amendment is adequate to vindicate the rights asserted by Plaintiffs."), citing *Albright v. Oliver,* 510 U.S. 266 (1994).

Templeton fails to meet his burden to plead facts overcoming the Officers qualified immunity. "'[Q]ualified immunity claims should be addressed separately for each individual defendant'," but Templeton treats all six (6) Officers as one. *Kitchen v. Dallas County, Tex.,* 759 F.3d 468, 480 (5th Cir. 2014). His failure to identify any Officer warrants dismissal of his due process claim because each Officer's acts must be considered separately to ascribe liability to a particular defendant, not his attempt at one-for-all and all-for-one. *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007) ("district court erred in considering the officers' actions together").

**B.**    **Templeton fails to state a Fourth Amendment unreasonable seizure claim.**

Templeton asserts a Fourth Amendment unreasonable seizure claim over his warrantless detention based solely on the factual conclusion that "having interacted with him during the prolonged period of his arrest, it must have been clear to them (as it would have been clear to an[y] reasonable person) that he did not meet the emergency criteria for warrantless involuntary civil commitment." *2nd Amended Complaint,* ¶6. He pleads the legal conclusion that the Officers "used

unnecessary, objectively unreasonable force while detaining Mr. Templeton, and inflicted serious injury. The officers' use of force was unreasonable under Fourth Amendment standards. They had no articulable reason to believe he was dangerous when they detained him, and after they frisked him for weapons, they had no objective justification to treat him as dangerous. Although Mr. Templeton repeatedly cried out and told officers he was experiencing serious shoulder pain to the point his knees were buckling, the officers refused to remove the handcuffs or otherwise render aid, causing and aggravating a shoulder injury that later required extensive surgery to repair." *2nd Amended Complaint,* ¶21-23.

    1.    <u>Templeton fails to plead a 4th Amendment constitutional violation.</u>

There was no constitutional violation because the Officers complied with Section 573.001, relying on their own observations as well as professionals found to be "credible" by the Fifth Circuit. "[T]he officers relied on the representations of credible persons to believe that [plaintiff] met the statutory criteria for apprehension." *Rich v. Palko,* 920 F.3d 288, 295 (5th Cir. 2019) (officers relied on staff at Green Oaks hospital among others). In this case, the Officers relied on two LCSWs, the first who dispatched them based on his suicidal call to the crisis hotline, and the second who evaluated him based on a site visit. Templeton was not surprised by their presence when he arrived home, he was expecting them. <u>Exhibit A.</u> The Officers were not "recklessly and deliberately indifferent to Mr. Templeton's rights" (*2nd Amended Complaint,* ¶6), they "had to err on the side of caution given the circumstances," that is confronting an "armed" "EDP." <u>Exhibit A.</u> Templeton's self-serving assertions that both Defendants Remsing and McCollough were not credible are conclusory, devoid of factual support, and he fails to plead any facts showing that the Officers did not comply with Section 573.001. *Rich,* at 296 ("They accordingly had a lawful basis to detain him under the Texas Health and Safety Code and complied with the Code's requirements

by taking him directly to Green Oaks. The officers did not violate [plaintiff's] constitutional rights and are entitled to QI on the unlawful-detention claim.").

Under the collective knowledge doctrine, peace officers are not required to have personal knowledge where they have reasonably relied on information provided by another. *United States v. Ibarra,* 493 F.3d 526, 530 (5th Cir. 2007). Even in a mental health detention, "[a]s long as the information was observed by or communicated to [officer]—and Plaintiff has offered no evidence to show that it wasn't—such is sufficient to have probable cause. *Butler v. Hammett,* 2012 WL 1080657 (E.D. Tex.—Sherman Div. 2012). Templeton admits that the Officers relied on information provided by two LCSW with years of education and experience well beyond training at a police academy. Knowledge may be imputed even when officers are unaware of the specific facts that establish probable cause of removability. *See United States v. Zuniga,* 860 F.3d 276, 283 (5th Cir. 2017) ("Under the collective knowledge doctrine, an officer initiating the stop or conducting the search need not have personal knowledge of the evidence that gave rise to the reasonable suspicion or probable cause, so long as he is acting at the request of those who have the necessary information.").

2.  The law was not clearly established under these facts.

Templeton fails to plead facts overcoming six Officers qualified immunity which is his burden. Again, he fails to identify any Officer who unreasonably seized him which warrants dismissal of his claim. *Meadours,* at 422 ("district court erred in considering the officers' actions together."). The entirety of his unlawful seizure claim is based on the conclusory allegation that "it must have been clear . . . that he did not meet the emergency criteria for warrantless involuntary civil commitment." *2nd Amended Complaint,* ¶6. "[I]t must have been clear" (*2nd Amended*

*Complaint,* ¶26), is devoid of factual support, exactly the type of bald allegation that does not "raise a right to relief above the speculative level" to survive a Rule 12(c). *Twombly,* at 1965.

"Even assuming the officers violated [patient's] constitutional rights, Rich has failed to demonstrate that clearly established law put the officers on notice that their conduct was illegal. In fact, established law in this circuit suggests that the officers were acting legally by relying on the representations of credible persons that [patient] met the statutory requirements for apprehension." *Rich,* at 296 (The district court erred in denying QI on the claim of unlawful detention.").

### C. Templeton fails to state a Fourth Amendment excessive force claim.

Templeton asserts a Fourth Amendment excessive force claim alleging that the Officers "twisted his hands 180° and closed the handcuffs tightly so he could not rotate his hands, which caused further pain in the shoulder." *2nd Amended Complaint,* ¶3. Notably, he does seek medical expenses. *2nd Amended Complaint,* p.8.

#### 1. Templeton fails to plead a 4th Amendment constitutional violation.

Excessive force claims are assessed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1985). To prevail on a Fourth Amendment excessive force claim, a plaintiff must establish: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

##### a. Templeton fails to show a constitutional injury to meet the first element.

In a very similar case, Bruner told Brown not to handcuff Bruner's hands behind his back, because doing so would severely aggravate the injury and harm Bruner. According to Bruner, Brown then 'maliciously injured [Bruner] while improperly handcuffing [Bruner] to cause

[Bruner] pain and torture him'." *Bruner v. Brown,* 2017 WL 1549565 *1 (E.D. La. 2017). "Following an MRI, Bruner was diagnosed with tears of the 360-degree periphery of the cartilaginous lip of the glenoid labrum. Bruner alleges that Brown caused this injury when he handcuffed Bruner, and Bruner will require surgery to repair his shoulder." *Id.* "Here the Court finds that Bruner has failed to allege that Brown used excessive force that was clearly unreasonable. Bruner alleges, in essence, that Brown handcuffed Bruner's hands behind his back, after being warned that Bruner had a pre-existing shoulder injury. Although Bruner alleges that the cuffing was 'malicious', the Court must objectively analyze Brown's actions 'without regard to their underlying intent or motivation.' *Id.* In the Fifth Circuit, it takes far more than handcuffing to run afoul of the deferential 'clearly excessive' standard." *Id.,* *3; *Freeman v. Gore,* 483 F.3d 404, 416 (5th Cir. 2007) (no excessive force where "deputies twisted [plaintiff's] arms behind her back while handcuffing her, 'jerked her all over the carport,' and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms"). *Id.*

> b. *Injury was not directly and only from clearly excessive force to meet the second element.*

Injury was not "directly and only" from handcuffing; Templeton only complains of "aggravating a shoulder injury" that was preexisting. *2nd Amended Complaint,* ¶23. "Brown's preexisting injury does not change this analysis. '[A] plaintiff may recover for aggravation of a preexisting injury if the use of excessive force caused that aggravation.' *Callaway v. Travis Cty.,* No. 15-103, 2016 WL 4371943, at *6 (W.D. Tex. July 28, 2016). But a prerequisite to such recovery is that the force used by the officer be actually excessive. *See Freeman* 483 F.3d at 416 (to overcome qualified immunity, injury must 'result[] directly and only from a use of force that was clearly excessive.'). Reasonable force, even reasonable force leading to severe injury, is insufficient. Because the alleged handcuffing was an application of reasonable force, Brown is

shielded by qualified immunity. *See Wells v. Bonner,* 45 F.3d 90, 96 (5th Cir. 1995) (qualified immunity barred claim that handcuffing behind back exacerbated existing shoulder injury); *see also Dunn,* 79 F.3d at 403 (explaining *Wells* decision: 'The aggravation of the old injury was not attributable to the excessive component of the force used. Rather, aggravation of Wells's old shoulder injury was claimed to have been caused by handcuffing his hands behind his back, a routine police procedure.'). *Royster v. Nichols,* 698 F.3d 681, 690-91 (8th Cir. 2012) (upholding grant of summary judgment where officer cuffed arrestee's hands behind his back despite arrestees' request that the officer cuff him in the front because of an old back and shoulder injury)." *Id.*

Whether the force used was clearly excessive and clearly unreasonable depends on the facts and circumstances of each particular case. *Graham*, 490 U.S. at 396. The test used to determine whether a use of force was reasonable under the Fourth Amendment "is not capable of precise definition or mechanical application." *Graham*, at 396. Rather, "its proper application requires careful attention to the facts and circumstances of each particular case, including" (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*.

Officers reasonably believed Templeton posed an immediate threat to safety because they were warned by the crisis hotline that he was an "EDP" making suicidal threats, reported to have "numerous guns and ammunition." Exhibit A.

   c. *The force used was not clearly unreasonable to meet the third element.*

Although an Officer had his gun drawn, as soon as Templeton complied with verbal commands and was to his knees, the Officer "holstered my service weapon and took out my Taser to hold less lethal coverage. Templeton was handcuffed and frisked for officer safety." Exhibit

A. It is not unreasonable to handcuff an admittedly "armed" subject during an emergency detention. Exhibit A.

    2.    The law was not clearly established under these facts.

Templeton fails to plead facts overcoming six Officers qualified immunity which is his burden. Again, he fails to identify any Officer who used excessive force which warrants dismissal of his claim. *Meadours,* at 422 ("district court erred in considering the officers' actions together.").

Qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. *Morgan v. Swanson,* 659 F.3d 359, 370 (5th Cir. 2011) (en banc). To defeat a claim of qualified immunity, the plaintiff has the burden to demonstrate the inapplicability of the defense. *Atteberry v. Nocona General Hospital,* 430 F.3d 245, 253 (5th Cir. 2005). The plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Whitley v. Hanna,* 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011). "Courts have discretion to decide which prong of the qualified-immunity analysis to address first." *Morgan*, at 371 (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). Templeton's excessive force claim fails both prongs of qualified immunity.

The law was clearly established that law enforcement may have guns drawn until a subject is handcuffed when a subject "might be dangerous." *Davila v. U.S.,* 713 F.3d 248, 260 (5th Cir. 2013). Even when subjects are determined to be unarmed after-the-fact, "[g]iven the information at their disposal, their decision to handcuff the plaintiffs, to make them kneel outside the vehicle, and to draw their weapons on the plaintiffs did not constitute excessive force." *Davila*, at 260 ("the NPS Rangers surrounded the Kia with their guns drawn. They kept their guns drawn and aimed

at Davila and Duarte during the search, Davila, Duarte, and Davila's grandson were placed in handcuffs and required to kneel on the ground during the duration of the search, and were then placed into separate law enforcement vehicles while the officers checked their identity. They remained in handcuffs until another officer arrived at the scene and ordered the rangers to release them. Duarte was forced to kneel beside the muffler of a law enforcement vehicle that was still running during part of the search." The Fifth Circuit found that "the NPS Rangers were justified in drawing their weapons during the traffic stop because they had reason to believe that an occupant of the car might be dangerous. For the same reason, they were justified in handcuffing the plaintiffs and requiring them to kneel down." *Davila,* at 260 (internal citations omitted).

The right to use some degree of force to effectuate an arrest or investigatory stop is clearly established. *Graham,* 490 U.S. at 396. "For each deputy, the question is whether his actions were objectively unreasonable due to a clearly established constitutional duty not to use the kind of physical force he employed, and whether that duty was established at the time of the incident. 'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff.' *Thompson v. Upshur Cnty., Tex.,* 245 F.3d 447, 457 (5th Cir. 2001)." *Aguilar v Robertson,* 512 Fed.Appx. 444, 447 (5th Cir. 2013) ("We conclude that it was clearly established that some degree of force was permissible in effectuating an arrest where the suspect fails to comply with an officer's orders.") To be clearly established, "a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012). Existing precedent must have placed the statutory or constitutional question beyond debate. *Id.*

## V.
## Conclusion

Although Templeton has twice amended, he pleads only "legal conclusions couched as factual allegations" with no attempt to show the inapplicability of qualified immunity. *Papasan,* 478 U.S. at 286. His factual allegations are devoid of any factual support: (1) Defendant Remsing who dispatched APD to check welfare was not credible for Officers to detain him; (2) Defendant McCollough who evaluated him on site was not credible for Officers to seize him; and (3) it must have been clear to the Officers that he did not meet the emergency criteria for warrantless involuntary civil commitment to transport him. Similarly, his legal conclusion that if Officers had submitted an application for emergency detention to a magistrate, any magistrate would have denied the application, is devoid of any factual support. His pleading fails to name a single Officer to survive *Twombly,* or overcome qualified immunity warranting judgment on the pleadings.

## VI.
## Prayer

WHEREAS, Defendant Officers pray that Plaintiff's claims be dismissed, and for attorney's fees, costs, and whatever relief they are entitled at law or equity.

RESPECTFULLY SUBMITTED,

ANNE L. MORGAN, CITY ATTORNEY
MEGHAN L. RILEY, CHIEF, LITIGATION

*Chris Edwards*
CHRIS EDWARDS
State Bar No. 00789276
City of Austin
P. O. Box 1546
Austin, Texas 78767-1546
chris.edwards@austintexas.gov
Telephone (512) 974-2419
Facsimile (512) 974-1311

**ATTORNEYS FOR OFFICER DEFENDANTS**

## CERTIFICATE OF SERVICE

      This is to certify that I have served the foregoing on all parties or their attorneys of record, in compliance with the Federal Rules of Civil Procedure, this 26th day of May, 2020.

**Via CM/ECF:**

| | |
|---|---|
| Brian McGiverin<br>State Bar No. 24067760<br>brian@austincommunitylawcenter.org<br>AUSTIN COMMUNITY LAW CENTER<br>1411 West Ave., Ste. 104<br>Austin, Texas 78701<br>Telephone: (512) 596-0226<br>Facsimile: (512) 597-0805<br>**ATTORNEYS FOR PLAINTIFF** | Mark T. Beaman<br>State Bar No. 01955700<br>mbeaman@germer-austin.com<br>Ryan C. Bueche<br>State Bar No. 24064970<br>rbueche@germer-austin.com<br>Adrian R. Ciechanowicz<br>State Bar No. 24045659<br>aciechanowicz@gtermer-austin.com<br>GERMER BEAMAN & BROWN, P.L.L.C.<br>301 Congress Avenue, Suite 1700<br>Austin, Texas 78701<br>Telephone: (512) 472-0288<br>Facsimile: (512) 472-9260<br>**ATTORNEYS FOR DEFENDANT VANAJAKSHI PATURU, M.D.** |
| Michael H. Wallis<br>State Bar No. 24033426<br>MWallis@thorntonfirm.com<br>Laura Flores Macom<br>State Bar No. 24002512<br>LMacom@thorntonfirm.com<br>THORTON, BIECHLIN, REYNOLDS & GUERRA, L.C.<br>One International Centre<br>100 N.E. Loop 410, Suite 500<br>San Antonio, Texas 78261-4741<br>Telephone: (210) 581-0294<br>Facsimile: (210) 525-0666<br>**ATTORNEYS FOR DEFENDANT AUSTIN LAKES HOSPITAL** | William S. Helfand<br>State Bar No. 09388250<br>Bill.Helfand@lewisrisbois.com<br>Lewis Brisbois Bisgaard & Smith, LLP<br>24 Greenway Plaza, Suite 1400<br>Houston, Texas 77046<br>Telephone: (713) 659-6767<br>Facsimile: (713) 759-6830<br>**ATTORNEY FOR DEFENDANTS ROBIN REMSING, LCSW COLLEEN MCCOLLOUGH, LCSW AUSTIN-TRAVIS COUNTY MENTAL HEALTH AND MENTAL RETARDATION CENTER D/B/A/ INTEGRAL CARE** |

                                        *Chris Edwards*
                                        CHRIS EDWARDS